UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| DAVID CAMPBELL, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) No. 3:11 CV 74 |
| v. | ) |
| | ) |
| OSCAR COWEN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION and ORDER

David Campbell, a *pro se* prisoner, brought this suit against Starke County Sheriff Oscar Cowen and Starke County Jail employees Bob Simms, Eddy Dierssen, and Dawn Schumacher for housing him under inhumane conditions at the jail. (DE # 41.) Before the court are two motions filed by the defendants. Dierssen moves to dismiss the claim against him pursuant to FED. R. CIV. P. 12(b)(6) (DE # 48), and Schumacher moves for summary judgment on the ground that Campbell failed to exhaust his administrative remedies before filing suit. (DE # 60.) The court addresses each motion in turn.

**I.    Motion to Dismiss**

To survive dismissal under federal pleading standards, a complaint must contain enough factual matter to state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 603. In determining whether the complaint states a claim, the court must construe the

complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in the plaintiff's favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Furthermore, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Here, Campbell alleges that on or about December 17, 2009, he and four other pretrial detainees were placed in the "drunk tank" at the Starke County Jail, where they were kept for 10 days in "total darkness" in a filthy cell without proper bedding or hygiene supplies. (DE #38 at 3-5.) He claims that as a result of these conditions he lost weight, developed a rash, and suffered an exacerbation of his mental problems, which include agoraphobia, anxiety disorders, and paranoid schizophrenia. (*Id.* at 3-8.) With respect to Dierssen, Campbell alleges that on December 17, 2009, Dierssen became aware of the conditions under which he and the others were being housed. Dierssen contacted Simms to inform him that the detainees in the detox cell were being housed in total darkness. Simms allegedly told Dierssen to leave them in the dark, which he did. (*Id.* at 6.) It can be plausibly inferred from the complaint that Dierssen took no further action to remedy the situation during the 10 days Campbell and the others remained in the dark.

As was fully explained in the screening order, the conditions Campbell describes satisfy the objective component of the Fourteenth Amendment inquiry by showing that

he was deprived of the minimal civilized measures of life's necessities. *See, e.g., Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (inadequate bedding constituted denial of civilized measure of life's necessities); *Murphy v. Walker*, 51 F.3d 714, 720-21 (7th Cir. 1995) (inmate stated Eighth Amendment claim based on inadequate heat, clothing, and bedding); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (prisoner stated Eighth Amendment claim where he was held in a filthy cell that lacked adequate heating and contained inadequate bedding).

However, Dierssen argues that Campbell's allegations are inadequate to establish that he was deliberately indifferent to Campbell's health and safety. (DE # 48.) Admittedly the allegations against Dierssen are sparse, but they are sufficient to state a plausible claim under federal pleading standards.

As recounted above, Campbell alleges that Dierssen was personally aware of the conditions under which he and the other detainees were being housed. It can be plausibly inferred that Dierssen simply turned a blind eye to these conditions despite being aware that the detainees had no bedding, lights, or hygiene supplies. According to the complaint, these conditions continued for another 10 days after Dierssen became aware of them. Although further factual development may show that Dierssen did take some action to remedy the situation, or that it was beyond his control to do so, giving Campbell the inferences to which he is entitled at this stage, he has stated a plausible claim against Dierssen. *See Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (conduct is deliberately indifferent when the defendant knew "that the plaintiff was at serious risk

3

of being harmed and decided not to do anything to prevent that harm from occurring");
*Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference"); *Jackson*, 955 F.2d at 22 (finding adequate evidence of deliberate indifference where the plaintiff alleged that the defendants "visited his unit routinely, observed the conditions described in it, but failed to take adequate corrective measures").

Dierssen gives considerable weight to a statement in Campbell's complaint expressing concern that he did not have "enough factual matter" to state a claim against Dierssen. (*See* DE # 38 at 6.) Based on this statement, Dierssen argues that Campbell has pled himself out of court. (DE # 48 at 2.) The court disagrees. A *pro se* prisoner's own assessment of the adequacy of his pleading is irrelevant; the operative question is whether this court views the complaint as sufficient. As stated above, Campbell's allegations satisfy federal pleading standards. At this stage, Campbell could not be expected to know what transpired between Dierssen and the other defendants, or who among them should be held responsible for his 10-day detention in total darkness. *See Santiago v. Walls*, 599 F.3d 749, 763 (7th Cir. 2010) (observing that a *pro se* prisoner often may not know who among a group of defendants wronged him since an inmate's opportunities for conducting a precomplaint inquiry are "virtually nil"). All Campbell alleges that he knows is that Dierssen was fully aware of the deplorable conditions under which Campbell was housed and did nothing to help him. Campbell has

adequately stated a claim against Dierssen, and accordingly, the motion to dismiss will be denied.

## II. Motion for Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Pursuant to the Prison Litigation Reform Act ("PLRA"), prisoners are prohibited from bringing an action in federal court with respect to prison conditions until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The failure to exhaust is an affirmative defense on which the defendant bears the burden of proof. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

5

Nevertheless, inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The availability of a remedy is not a matter of what appears "on paper," but rather whether the process was in actuality available for the prisoner to pursue. *Kaba*, 458 F.3d at 684. Thus, when prison officials prevent an inmate from using the administrative process, such as by failing to provide him the necessary forms, administrative remedies are not considered to be "available." *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

Here, Schumacher has submitted evidence that the jail has a grievance process in place through which detainees can complain about the conditions of their confinement. (DE # 61-2 at 1-3.) Campbell does not dispute that he failed to avail himself of the grievance process, but asserts that he did not do so for two reasons. (DE ## 58, 69.) He asserts that he was never made aware of the existence of the grievance process, and furthermore, even if he had been aware of the process, he would have been unable to file a grievance because he was housed in "total darkness without any supplies to write with." (DE # 69.)

6

Schumacher faults Campbell's assertions for being "self-serving" and thus insufficient to defeat summary judgment.[1] (DE # 72 at 2.) However, there is no question that a non-moving party's affidavit can be sufficient to defeat a motion for summary judgment. *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003). An affidavit is not deficient simply because it serves the affiant's own interests:

> The defendant points to a number of cases from this Circuit for the proposition that self-serving, uncorroborated, and conclusory statements in testimony are insufficient to defeat a motion for summary judgment. It is not the self-serving nature of the affidavits, however, that sealed their fate in these cases. After all, most affidavits submitted for these purposes are self-serving. Instead, these affidavits fail to thwart summary judgment because they are not based on personal knowledge as required by both the Federal Rule of Civil Procedure on summary judgment, Rule 56(e) . . . and by Federal Rule of Evidence 602 . . . . Furthermore, although personal knowledge may include reasonable inferences, those inferences must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.

---

[1] Schumacher's reply brief is somewhat confusing, and it is not clear if she is arguing that one of Campbell's documents was not submitted in the form of an affidavit. (*See* DE # 72; *see also* DE # 69.) Campbell submitted an affidavit attesting to being housed in total darkness with no hygiene supplies, bedding, or personal items. (DE # 58.) In a separate document, which is not notarized, he asserts that he was not made aware of the grievance process. (DE # 69.) Although not in the form of an affidavit, the statements in this document are based on Campbell's own personal knowledge and would be admissible through his testimony at trial. *See* FED. R. CIV. P. 56(c)(2), (4). The court is cognizant of Campbell's *pro se* status, and also takes into account the added confusion caused by the fact that Schumacher originally filed a motion to dismiss under FED. R. CIV. P. 12(b)(6), despite attaching outside documents for the court's consideration. (*See* DE # 60.) The motion was converted to a motion for summary judgment, but Campbell's response indicates that he may be confused about the nature of the proceedings, as he requests that the court not "dismiss" his case. (*See* DE # 69.) Under these circumstances, the court finds it appropriate to consider Campbell's filing.

*Payne*, 337 F.3d 772. Campbell's assertions do not suffer from these deficiencies. Instead he makes assertions about two matters within his personal knowledge. There is nothing inherently implausible about his assertions, and the court cannot reject them simply because they serve Campbell's interests.

Other than attacking Campbell's responsive documents as "self-serving," Schumacher does not offer specific evidence to refute his assertions. She submitted an affidavit from Sheriff Cowen along with her original motion, which indicates that the jail has a general practice of informing detainees about the grievance process at the time they are booked in the jail. (DE # 61-2.) This assertion does not directly undercut Campbell's claim that *he* was not told about the grievance process, nor does it appear from Sheriff Cowen's affidavit that he was the jail employee who booked Campbell or that he otherwise has personal knowledge of what occurred in connection with Campbell's booking. (*See id.*)

Nevertheless, even if Sheriff Cowen's affidavit created factual dispute over whether Campbell was told about the grievance process, as stated above, Campbell provides another reason why he did not file a grievance. He claims that he was unable to submit a written grievance in any event because he was housed in total darkness and had no access to writing supplies, paper, or the necessary forms. (DE # 58, 69.) He further asserts that he and the other detainees made repeated oral complaints to the correctional officers about the conditions of their confinement, but instead of being given a written grievance form to complete they were told simply to "talk to the

Sheriff." (DE # 69.) Campbell attests that when they did speak to the Sheriff, he told them, "F--- you, you little bastards. You can rot in there." (*Id.*) In addition to his own affidavit, he submits an affidavit from another detainee held in the drunk tank who attests to the lack of lighting and other conditions Campbell describes. (DE # 74 at 3.) He also submits an affidavit from a former Starke County Jail officer, who attests that he witnessed Campbell and the other detainees being held in "terrible" conditions without lights, adequate bedding, or other items. (DE # 74 at 1.)

Schumacher has not submitted evidence to refute these assertions. Therefore, the undisputed facts show that under the circumstances, the grievance process was not "available" to Campbell. *See Kaba*, 458 F.3d at 684-85 (summary judgment not appropriate where the plaintiff submitted evidence that he was denied forms and intimidated into not pursuing a formal grievance); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (reversing summary judgment where the plaintiff submitted evidence that he was not given the proper forms needed to exhaust). Schumacher has not met her burden of demonstrating that she is entitled to judgment on exhaustion grounds, and accordingly, the motion will be denied.

III. Conclusion

For the reasons set forth above, the motion to dismiss (DE # 48) and the motion for summary judgment (DE # 60) are **DENIED**.

**SO ORDERED.**

Date: May 9, 2012

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT