UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DAVID L. CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:11-cv-00074-JTM |
| vs. | ) | |
| | ) | |
| OSCAR COWEN, ED DEIRSSEN, SKYLAR ELLINGTON, BOB SIMMS and DAWN SHOEMAKER, | ) | |
| | ) | |
| Defendants, | ) | |
| _____ | ) | |
| | ) | |
| SHANNON WATTS, | ) | |
| | ) | |
| Plaintiff, | ) | 3:11-cv-00052-JTM |
| | ) | |
| v. | ) | |
| | ) | |
| OSCAR COWEN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF
DAWN SHOEMAKER'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Dawn Schumacher, (incorrectly identified by Plaintiff as Dawn Shoemaker, hereafter "Nurse Schumacher,") by counsel and for her Memorandum in Support of her Motion for Summary Judgment, states the following:

**ISSUE**

Whether Dawn Schumacher was deliberately indifferent to David Campbell's (hereafter "Mr. Campbell") medical needs while house in the detox cell at the Starke County Jail, when she had no knowledge of Mr. Campbell's need or requests for medical attention.

## INTRODUCTION

At all times relevant to Mr. Campbell's allegations, he was incarcerated at the Starke County Jail ("Jail") for resisting law enforcement, battery, probation violation and operating a motor-vehicle without a license. Mr. Campbell filed this action against Defendant Nurse Schumacher for her alleged deliberate indifference to his serious medical and/or mental health needs.

As alleged in his Amended Complaint, Mr. Campbell brought suit against Nurse Schumacher because "she is aware of [Mr. Campbell's] mental health conditions," and "she did nothing about the health and safety of [Mr. Campbell]" while he was housed in the detox cell. *David Campbell's Amended Complaint, attached to Designation as* **Exhibit A,** *p. 2*. Finally, Mr. Campbell alleges that Nurse Schumacher "refused to see [Mr. Campbell] without filling out a sick call request." *Id., p. 4*. The process at the Jail for an inmate to request healthcare requires the inmate to complete a Sick Call Request form and provide it to jail staff. Staff then delivers the form to the appropriate department and the request is addressed by the department staff. Completion of this form is required to provide notice to the department and allow them to properly assess the nature of the request.

Summary judgment for Nurse Schumacher is appropriate because the record before this Court does not support Mr. Campbell's claims that Nurse Schumacher was deliberately indifferent to his healthcare needs. The evidence is to the contrary; Nurse Schumacher was unaware that Mr. Campbell required or requested medical care and she responded promptly once she received Mr. Campbell's Sick Call Request form. Based on the facts and evidence, Mr. Campbell's Amended Complaint must fail as a matter of law.

## **STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Mr. Campbell filed his Amended Complaint on September 2, 2011 alleging that Nurse Schumacher was deliberately indifferent to his medical and mental health needs. *David Campbell's Amended Complaint, attached to Designation as **Exhibit A***. On July 9, 2012, the court granted Mr. Campbell's Motion to Intervene in the case Watts v. Cowen, 3:11-cv-52-JTM. *See Court Order, Document No. 93, attached to Designation as **Exhibit B***. The two Plaintiffs in the aforementioned case, Shannon Watts (hereafter "Mr. Watts) and Thomas Skibbe (hereafter "Mr. Skibbe") filed Plaintiff's First Amended Complaint on December 19, 2011. *Plaintiffs' First Amended Complaint, attached to designation as **Exhibit C***. Mr. Watts and Mr. Skibbe did not name Nurse Schumacher as a defendant and have not raised any claims against her. *Id*.

On July 18, 2009, Mr. Campbell was arrested for resisting law enforcement, battery, probation violation and operating a motor-vehicle without a license. *Deposition of David Campbell, attached to Designation as **Exhibit E**, p. 12, l. 11-15*. On July 21, 2009, Mr. Campbell completed a Jail History and Physical form by responding to a series of questions by Nurse Schumacher. *Id., p. 20, l. 8-11*. At that time, Mr. Campbell reported to Nurse Schumacher that he was not experiencing any mental health problems, was not under the care of a doctor and was not taking any medications. *Id, p. 21, l. 3-23*, *see also Affidavit of Dawn Schumacher, R.N., attached to Designation as **Exhi bit D**, para. 7*. From July 21, 2009 through December 17, 2009, Nurse Schumacher saw Mr. Campbell on six occasions; none of his nursing visits were related to, nor did he mention, any mental health problems or concerns. *Id., para. 8*. Mr. Campbell was aware of the Jail's process requiring the completion of a Sick Call Request form to obtain medical or mental health treatment and had completed that process on more than four occasions. *Deposition of David Campbell, attached to Designation as **Exhibit E**, p. 19, l. 9-*

*23.*

From December 17, 2009 through December 26, 2009, Mr. Campbell was housed in the detox cell at the Starke County Jail. *Affidavit of Dawn Schumacher, R.N., attached to Designation as **Exhibit D**, para. 9.* Shannon Watts, Thomas Skibbe, Seth Draper, and Clinton Wilcox were also housed in the detox cell during that time. *Deposition of David Campbell, attached to Designation as **Exhibit E**, p. 23, l. 22-25, p. 24, l. 1-2.* The detox cell has only one window located on the cell door. *Id., at p.14, l.11-19.* The window is covered by a flap, or door, that can be opened and closed from the outside of the cell. *Id.* Nurse Schumacher was not included in the decision to place Mr. Campbell (or the other inmates) in the detox cell. *Affidavit of Dawn Schumacher, R.N., attached to Designation as **Exhibit D**, para. 9.* During this time, Nurse Schumacher did not receive any Sick Call Requests from Mr. Campbell, nor was she advised by jail staff that Mr. Campbell was requesting medical or mental healthcare. *Id., para. 10.* From December 17, 2009 through December 26, 2009, Nurse Schumacher did not hear Mr. Campbell verbally request a medical or mental health visit. *Id., para. 11.* Nurse Schumacher was not aware that Mr. Campbell was unable to complete a sick call request form while in the detox cell. *Id., para. 12.*

Mr. Campbell alleges that he yelled to Nurse Schumacher through the detox cell walls and told her that he needed to speak her. *Deposition of David Campbell, attached to Designation as **Exhibit E**, p. 27, l.12-25, p. 28, l. 1-16.* He testified that she told him that he needed to fill out a medical request and submit it to her. *Id.* Although he believes he recognized her voice, Mr. Campbell could not see Nurse Schumacher while he was yelling to her through the cell wall. *Id.* Additionally, Mr. Campbell admits that he has no indication as to whether Nurse Schumacher heard his specific needs and/or requests during that time. *Id. at p. 29, l. 5-16.* Mr. Campbell also

alleges that he asked jailors to advise Nurse Schumacher that he needed to be seen by her, but he has no knowledge as to whether or not Nurse Schumacher was ever advised of his request. *Id. at p. 30, l. 4-11.* Mr. Campbell never asked jail staff to complete a health care request form on his behalf. *Id. at p. 31, l. 5-8.* On December 26, 2009, the inmates were released from the detox cell following Mr. Campbell's attempted escape. *Id. at p.32, l. 1-2.*

On December 30, 2009, Mr. Campbell refused his H1N1 vaccination; at that time he did not raise any concerns or issues regarding his medical or mental health. *Affidavit of Dawn Schumacher, R.N., attached to Designation as* **Exhibit D***, para. 13.* Following Mr. Campbell's stay in the detox cell, the first request for healthcare Nurse Schumacher received was dated January 11, 2010. *Id., para. 14.* At 10:14 a.m. on January 12, 2010, Nurse Schumacher saw Mr. Campbell for complaints of hearing voices. *Id., para. 15.* He indicated that after he attempted to escape, he was placed in isolation and stated "[n]ow I'm going crazy" and "[t]hese voices are driving me insane." *Id., para. 15.*

On January 12, 2010, in response to Mr. Campbell's complaints, Dr. Cullinen prescribed him Thorazine 100mg and Benadryl 25mg twice per day. *Id., para. 16.* Mr. Campbell began receiving this medication at the next medication round, which was 7:00 p.m. on January 12, 2010. *Id., para. 16.* (It should be noted that Nurse Schumacher misdated Mr. Campbell's Medication Administration Record for January 2010; the attached record indicates an original order date of "1/12/01," but the actual original order date was January 12, 2010. *Id., para. 17.)* Exhibit D to the Affidavit of Nurse Schumacher is Mr. Campbell's charting for January 2010. *Id., para. 17.*

Mr. Campbell was seen within 24 hours of his sick call request on January 11, 2010 and received medication for his symptoms within seven hours of his nurse visit on January 12, 2010.

5

*Id., para. 18.* Although Nurse Schumacher was aware that Mr. Campbell had been treated for mental health problems during a prior incarceration in 2007, from the time of her intake on July 21, 2009 until receiving his January 11, 2010 sick call request, she was not aware that Mr. Campbell was experiencing any mental health problems while at the Jail. *Id., para. 19.*

## STANDARD OF REVIEW

The party seeking summary judgment must demonstrate that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure; *Certain Underwriters of Lloyd's v. General Accident Insurance Company of America*, 909 F.2d 228 (7th Cir. 1990). Once the movant makes such a showing, the opponent must produce evidence to show that material facts are actually in dispute. *Lujan v. National Wildlife Federation*, 110 S. Ct. 31777 (1990); *Celotex Corporation v. Catrett*, 477 U.S. 37 (1986); *Sims v. Mulcahy*, 902 F.2d 524 (7th Cir.), cert. denied 111 S. Ct. 249 (1990). If the party opposing the motion fails to do so, summary judgment is appropriate. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254 (7th Cir.), cert. denied, 474 U.S. 829 (1990). Since the decision in *Celotex Corporation*, the party bearing the burden of proof on an issue must produce evidence sufficient to establish the existence of every element essential to the party's cause. 477 U.S. at 322-23.

To defeat a motion for summary judgment, the opposing party must establish that sufficient evidence exists for a jury to return a verdict for him. *Harbor House Condominium Association v. Massachusetts Bay Insurance Company*, 915 F.2d 31 (7th Cir. 1990); *Hines v. British Steel Corporation*, 907 F.2d 726 (7th Cir. 1990). The opposing party cannot rest on mere allegations in the pleadings, but must designate disputed facts that are material, or outcome-determinative, under applicable law. *Hughes v. Joliet Correctional Center*, 931 F.2d 425 (7th

Cir. 1991); *Johnson v. Pelker*, 891 F.2d 136 (7th Cir. 1989). In this case, no material issues of fact exist that would preclude summary judgment for Nurse Schumacher.

## ARGUMENT

Mr. Campbell has alleged that Nurse Schumacher refused to see Mr. Campbell without a Sick Call Request and failed to do anything about his health and safety while he was housed in the detox cell. Mr. Campbell's claims are limited to the allegation that Nurse Schumacher should have responded to Mr. Campbell's verbal communication which he shouted through the cell wall. However, Nurse Schumacher neither heard these verbal requests, nor was she informed of them by other jail staff. Therefore, Nurse Schumacher could not have been deliberately indifferent to a medical need that she was not aware of.

Mr. Campbell's claims must fail as a matter of law unless he can prove that Nurse Schumacher was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291 (1976). The Supreme Court observed in *Estelle v. Gamble*, 97 S. Ct. at 292, that:

> In order to state a cognizable claim a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

To meet the deliberate indifference standard, Mr. Campbell must show that he has a serious medical condition that mandates treatment and that Nurse Schumacher acted with a culpable state of mind. *Farmer v. Brennan*, 114 S. Ct. 1970, 1981 (1994); *Steading v. Thompson*, 941 F.2d 498, 500 (7th Cir. 1991), *cert. denied*, 112 S. Ct. 1206 (1992). Prison officials are only liable under the Eighth Amendment if they have knowledge of and disregard an excessive risk to

7

an inmate's health or safety; showing a culpable mental state is essential to establishing this. *Farmer v. Brennan*, 114 S. Ct. at 1979.

Deliberate indifference means recklessness in a criminal subjective sense, such as disregarding a risk of danger so great that knowledge of the danger can be inferred. *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992). Negligence or even gross negligence cannot establish a Constitutional violation. *Goka v. Bobbit*, 862 F.2d 646, 650 (7th Cir. 1988). Subjective intent may be established by showing that the defendant had actual knowledge of impending harm that was easily preventable, such that conscious refusal to prevent the harm can be inferred from the defendant's failure to prevent it or showing that a defendant deliberately avoided acquiring knowledge of impending harm. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992); *Patrick v. Staples*, 780 F. Supp. 1528 (N.D. Ind. 1991).

The Supreme Court has interpreted the Eighth Amendment's proscription against cruel and unusual punishment as imposing a duty upon the States, through the Fourteenth amendment, to provide adequate medical care to incarcerated individuals. *Boyce v. Moore*, 314 F.3d 884, 888-889, (7th Cir. 2002), citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). A prisoner does not get unqualified access to healthcare. Rather, they are entitled to only adequate medical care. A plaintiff cannot demand specific care and is not entitled to the best care possible. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006); *Boyce v. Moore,* 314 F.3d at 888-889; *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999). Additionally, "[t]here is not one 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional

judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998)); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006).

Even should Mr. Campbell's complaints of hearing voices be considered a "serious medical need," there is no evidence to support that Nurse Schumacher acted with a culpable state of mind and deliberately ignored Mr. Campbell's "serious medical need." In fact, the evidence is to the contrary.

### A. Mr. Campbell was not experiencing or being treated for any current mental health issues on December 17, 2009.

Mr. Campbell alleges that Nurse Schumacher knew that he had been treated for mental health problems in 2007. However, the evidence shows, and Mr. Campbell admits, that from his incarceration on July 18, 2009 until December 17, 2009, he was not experiencing any mental health issues. During the intake process on July 21, 2009, Nurse Schumacher completed Mr. Campbell's Jail History, at which time he advised her that he was not experiencing any mental health issues, was not taking any medication, and was not being treated by a physician. From July 18, 2009 until his incarceration in the detox cell on December 17, 2009, Mr. Campell did not raise any mental health concerns during his six visits with Nurse Schumacher, nor did he complete any requests for health care relating to mental health issues. Therefore, regardless of any prior treatment for mental health issues, Mr. Campbell was not presently experiencing any mental health problems at the time he was moved to the detox cell on December 17, 2009.

Until Nurse Schumacher was provided with information regarding a change in Mr. Campbell's medical or mental health status, she had no way of knowing that he required care or treatment during his stay in the detox cell. Nurse Schumacher's knowledge that Mr. Campbell

9

had experienced mental health issues in 2007 does not exhibit an intentional disregard for a serious medical need, because Nurse Schumacher knew that Mr. Campbell had not complained of or been treated for mental health issues for at least five months prior to December 17, 2009.

> **B. Nurse Schumacher had no knowledge that Mr. Campbell was experiencing mental health problems from December 17, 2009 through December 26, 2009.**

Nurse Schumacher was not aware that Mr. Campbell began to allegedly experience mental health issues during his stay in the detox cell from December 17, 2009 through December 26, 2009. She did not hear Mr. Campbell request healthcare, she was not advised by jail staff that Mr. Campbell requested healthcare, and she did not receive any Sick Call Requests from Mr. Campell. Nurse Schumacher was also not aware that Mr. Campbell was unable to obtain a Sick Call Request form.

In order to prove his claims that Nurse Schumacher was deliberately indifferent to his serious medical need, Mr. Campbell must establish that Nurse Schumacher **knew** of it **disregarded** an excessive risk to Mr. Campbell's health or safety. *Farmer v. Brennan*, 114 S. Ct. 1970, 1981 (1994). Nurse Schumacher had no knowledge of Mr. Campbell's medical or mental health needs from December 17, 2009 through December 26, 2009. Mr. Campbell cannot present any evidence to prove that Nurse Schumacher was aware of his needs, nor can he prove that she knew Mr. Campbell was unable to complete a Sick Call Request form. Due to Mr. Campbell's inability to prove the subjective knowledge element of deliberate indifference, judgment should be entered in favor of Nurse Schumacher.

The party bearing the burden of proof on an issue must produce evidence sufficient to establish the existence of every element essential to the party's cause. *Celotex Corporation v. Catrett*, 477 U.S. 37 (1986). Mr. Campbell alleges that he attempted to communicate with Nurse

Schumacher through the cell walls and that she responded by telling him that he needed to complete a Sick Call Request form. However, Mr. Campbell has acknowledged that he cannot prove that Nurse Schumacher heard what his needs were, nor can he show that she knew he was unable to complete a Sick Call Request form. Plaintiff's testimony that he yelled to Nurse Schumacher and she told him to complete a Sick Call Request Form is not sufficient evidence to prove that she had actual knowledge of a risk of harm to Mr. Campbell or that she disregarded a risk of harm. Additionally, these facts are not material or outcome determinative for the purpose of creating an issue of fact, because even if taken as true, Mr. Campbell admitted that there is no evidence that Nurse Schumacher actually heard what Mr. Campbell's needs were or knew that he could not complete a Sick Call Request form. Instead, the designated evidence confirms that Nurse Schumacher was <u>not</u> aware of Mr. Campbell's needs or that he could not complete a Sick Call Request form.

To defeat a motion for summary judgment, the opposing party must establish that sufficient evidence exists for a jury to return a verdict for him. *Harbor House Condominium Association v. Massachusetts Bay Insurance Company*, 915 F.2d 31 (7th Cir. 1990); *Hines v. British Steel Corporation*, 907 F.2d 726 (7th Cir. 1990). Mr. Campbell's mere *belief* that Nurse Schumacher heard his healthcare needs, without actual evidence, is not sufficient for a jury to return a verdict for him. Even when taking the facts as they are alleged by Mr. Campbell, judgment still must be entered in favor of Nurse Schumacher.

> **C. Nurse Schumacher saw Mr. Campbell within one day of his January 11, 2010 Sick Call Request and he was provided with medication on the same day as his nursing visit.**

On December 30, 2009, Nurse Schumacher saw Mr. Campbell for his H1N1 vaccination, which he refused. At that time, he did not raise any medical or mental health concerns.

11

Therefore, Nurse Schumacher was still unaware that Mr. Campbell had any healthcare concerns. On January 11, 2010, Mr. Campbell completed a Sick Call Request form indicating that he needed his medications. At 10:14 a.m. on January 12, 2010, Nurse Schumacher saw Mr. Campbell for his complaints that he was hearing voices and needed his medication. He indicated that after his attempted escape, he was placed in an isolation cell and stated "[n]ow I'm going crazy." In response to these complaints, Nurse Schumacher notified Dr. Cullinen and received orders to prescribe Mr. Campbell with Thorazine 100mg and Benadryl 25 mg, each to be taken twice per day. Mr. Campbell received his first dose of these medications during the next medical round at 7:00 p.m. on January 12, 2010.

Nurse Schumacher saw Mr. Campbell within 24 hours of his Sick Call Request, obtained appropriate orders from Dr. Cullinen to address Mr. Campbell's complaints, and Mr. Campbell was provided with his medications during the very next medication round. Nurse Schumacher did not disregard Mr. Campbell's healthcare needs; rather, she promptly addressed his needs once she became aware of them and is, therefore, entitled to judgment as a matter of law.

## **CONCLUSION**

Mr. Campbell cannot establish the elements of his deliberate indifference claim against Nurse Schumacher. He alleges that she failed to address his healthcare needs while he was housed in the detox cell. However, Nurse Schumacher did not become aware of Mr. Campbell's healthcare needs until she received his Sick Call Request form completed on January 11, 2010 (after his release from the detox cell). On January 12, 2010, Nurse Schumacher promptly addressed his needs and he was provided with medication that day. Mr. Campbell cannot demonstrate that Nurse Schumacher was aware of his healthcare needs prior to January 11, 2010, he cannot demonstrate that Nurse Schumacher disregarded a risk to him and he is, therefore, also

unable to demonstrate that Nurse Schumacher acted with a culpable state of mind. As such, Mr. Campbell has failed to prove any of the elements of his deliberate indifference claim and Nurse Schumacher is entitled to judgment as a matter of law.

WHEREFORE, Defendant respectfully requests that this Court grant her Motion for Summary Judgment and for all other just and proper relief.

Respectfully submitted,

/s/ Rachel A. East_____
Rachel A. East, #28235-49
One of the Attorneys for Dawn Shoemaker

Jeb A. Crandall, #26323-49
James F. Bleeke, #4331-49
Rachel A. East, #28235-49
Bleeke Dillon Crandall, P.C.
8470 Allison Pointe Blvd., Ste. 420
Indianapolis, IN 46250-4365
Telephone: (317) 567-2222
Facsimile: (317) 567-2220
jim@bleekedilloncrandall.com
jeb@bleekedilloncrandall.com
rachel@bleekedilloncrandall.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 12, 2012, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

      Kenneth A. Collier-Magar
      Law Offices of Collier-Magar, P.C.
      211 South Ritter Avenue, Suite C
      Indianapolis, IN 46219
      Kenneth@cmrlawfirm.com
      *Attorney for Oscar Cowen, Ed Deirssen, Skylar Ellinger*

      Edward J. Fujawa
      Susan E. Cline
      Lewis Wagner, LLP
      501 Indiana Avenue, Suite 200
      Indianapolis, IN 46202-3199
      efujawa@lewiswagner.com
      scline@lewiswagner.com

      Christopher C. Myers
      Ilene M. Smith
      809 South Calhoun Street, Suite 400
      Fort Wayne, IN 46802
      cmyers@myers-law.com
      ismith@myers-law.com
      *Attorneys for Plaintiffs, David L. Campbell, Shannon Watts and Thomas Skibbe*

      I hereby certify that on December ___, 2012, a copy of the foregoing was mailed by first-class U.S. Mail, postage prepaid and property addressed to the following:

      n/a

                                      s/ Rachel A. East