UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| **DAVID CAMPBELL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | )   No. 3:11 CV 74 |
| v. | ) |
| | ) |
| **DAWN SHOEMAKER,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

<u>**OPINION and ORDER**</u>

This matter is before the court on defendant Dawn Shoemaker's motion for summary judgment. (DE # 96.) For the reasons set forth below, the motion is granted.

**I.     BACKGROUND**

Plaintiff, who has been in and out of various jails over the years, testified in his deposition that he was incarcerated at the Starke County Jail sometime in 2003. (DE # 98-5 at 3, Pl. Dep. 16:4-11.) While incarcerated in 2003, plaintiff experienced audio and visual hallucinations and was treated by a jail employee named Jamie Fletcher, who would visit him and prescribe medications. (*Id.*, Pl. Dep. 16:9-24.) Another jail nurse, defendant Dawn Shoemaker, attested via affidavit that she was aware that plaintiff was also treated for mental health problems during an incarceration in 2007. (DE # 98-4 at 3.)

Plaintiff was again incarcerated in the Starke County Jail in July 2009. (DE # 98-5 at 2, Pl. Dep. 12:9-22.) During intake procedures, plaintiff told Shoemaker that he had no current mental problems and was taking no medications. (*Id.* at 5, Pl. Dep. 21:3-12; DE # 98-4 at 4.) On December 17, 2009, jail officials moved plaintiff and other inmates

from their cell block to a "drunk tank," because the officials believed the inmates were trying to start a fire. (DE # 98-5 at 5, Pl. Dep. 23:6-13, 24:17-20.) Plaintiff claims that while he was in the drunk tank, the lightbulb blew out. (*Id.* at 6, Pl. Dep. 25:20-22.) A few days after the light went out, plaintiff started hearing voices and seeing things. (*Id.* at 6, Pl. Dep. 28:23-25.) Plaintiff testified that he could hear Shoemaker through the door of the drunk tank, and "would holler for her to come over there" and would "tell her my name and tell her I needed to speak with her," and Shoemaker would tell him that he needed to fill out a mental health request. (*Id.* at 6, Pl. Dep. 27:18-21, 28:8-9, 15-16.) Plaintiff further attested that he could not see that it was Shoemaker, but believed it to be her from her voice. (*Id.* at 6, Pl. Dep. 28:1-4.)

Shoemaker has attested, via affidavit, that from December 17, 2009, to December 26, 2009, the time in which plaintiff was housed in the drunk tank, she did not receive any "Sick Call Requests" from plaintiff, nor was she advised by jail staff that plaintiff was requesting medical or mental healthcare. (DE # 98-4 at 2.) Shoemaker further attested that during this same time period, she did not hear plaintiff verbally request a medical or mental health visit. (*Id.*) Shoemaker stated that she saw plaintiff on December 30, 2009, at which point plaintiff refused an H1N1 vaccination but did not raise any concerns regarding his medical or mental health. (*Id.*) According to Shoemaker, the first request she received from plaintiff for healthcare was on January 11, 2010. (*Id.*) Shoemaker states that the next morning, on January 12, 2010, she saw plaintiff and he complained of hearing voices. (*Id.*) At that time, a jail doctor named Dr.

2

Cullinen prescribed medications for plaintiff, which he started receiving that same night. (*Id.* at 2-3.)

The record contains a "Sick Call Request Form" authored by plaintiff, and dated January 11, 2010, in which plaintiff states: "I really need my meds please." (DE # 98-4 at 7.) The record also contains "Medical Progress Notes" authored by Shoemaker; a note dated January 12, 2010, states that plaintiff was prescribed medications for psychosocial and mental health issues, which were evidenced by plaintiff's complaints that "now I'm going crazy" and "these voices are driving me insane." (DE # 98-4 at 6.)

Plaintiff filed suit, *pro se*, against Shoemaker and others, claiming his constitutional rights were violated in various respects during his 2009 stay in the Starke County Jail. (DE # 38, Pl.'s Am. Compl.) Later, plaintiff obtained representation by counsel, and he remains represented today. (DE # 90.) Except for Shoemaker, all defendants have been dismissed by the court or have been voluntarily dismissed by plaintiff. Plaintiff claims he was denied mental health care and medications due to Shoemaker's actions. (DE # 98-5 at 6, Pl. Dep. 26:16-23.) Shoemaker has moved for summary judgment (DE # 96), and despite the fact that he is now represented by counsel, plaintiff filed no response to Shoemaker's motion.

## II.     LEGAL STANDARD

Defendant Shoemaker has moved for summary judgment. FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. Once the moving party has met his burden, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003) (citing *Celotex,* 477 U.S. at 324). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966 (7th Cir. 1998); *Doe,* 42 F.3d at 443.

Because plaintiff failed to file a response to Shoemaker's motion for summary judgment, Shoemaker is entitled to summary ruling on the motion – that is, a ruling without the benefit of plaintiff's response. However, plaintiff's failure to respond does not automatically result in summary judgment for Shoemaker. *Wienco, Inc. v. Katahn Assoc., Inc.,* 965 F.2d 565, 568 (7th Cir. 1992). Rather, the court must still "make the further finding that given the undisputed facts, summary judgment is proper as a matter of law." *Id.* Accordingly, the court's task is to examine the factual record in this case to determine whether Shoemaker has met her burden of demonstrating a lack of genuine issues of material fact warranting summary judgment in her favor.

### III. DISCUSSION

Because Campbell was a pretrial detainee at the time of the events in question, the Fourteenth rather than the Eighth Amendment applies. *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009). The standards that apply are functionally equivalent, and "anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment." *Id.* Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability for a denial of medical care, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the defendant acted with deliberate indifference to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a

5

substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Deliberate indifference is a high standard. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted). Negligence, incompetence, and even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004); *Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000). Instead the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Synder*, 546 F.3d 516, 524 (7th Cir. 2008).

Here, Shoemaker has pointed out that plaintiff lacks evidence that she acted with deliberate indifference towards plaintiff's mental health needs. Shoemaker has attested that she did not hear plaintiff verbally request a medical or mental health visit while he was in the drunk tank, nor was she advised by jail staff that plaintiff was requesting medical or mental healthcare. And "[n]othing requires the district court to disbelieve defendants' proffered evidence simply because [the plaintiff]—without proof—asserts it is false." *Carroll v. Lynch,* 698 F.3d 561, 565 (7th Cir. 2012) (rejecting plaintiff's argument

that district court improperly credited opponent's testimony at summary judgment stage). Plaintiff "cannot rest on 'metaphysical doubt' that [his opponent] lied but must produce evidence so showing." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).

However, plaintiff has not done so. Plaintiff has submitted no evidence whatsoever to support his case in this respect, and the best evidence in the record in support of plaintiff's argument is his own deposition testimony, submitted by Shoemaker in support of her motion, in which plaintiff stated that he hollered for Shoemaker to come over and told her he needed to speak with her. Even assuming this occurred, such a demand from a prisoner can hardly be said to have provided sufficient information from which a nurse could become aware of serious mental health concerns. *See Massey v. Smith,* 555 F. Supp. 743, 748 (N.D. Ind. 1983) ("Unless the Constitution could be read as requiring correctional officers to be prescient or to have psychic powers, . . . defendant . . . cannot possibly be found liable.").

Prison officials "must have *actual* knowledge of the risk" in order to be deliberately indifferent. *Washington v. LaPorte County Sheriff's Dep't,* 306 F.3d 515, 518 (7th Cir. 2002) (emphasis in original). There is no evidence in this case that Shoemaker had actual knowledge of plaintiff's mental health issues while he was housed in the drunk tank. Just 5 months prior to the events in question, plaintiff reported during his intake examination that he had no mental health concerns and required no medications. Thus, according to plaintiff's own self-reporting, his mental health was no longer an

issue. Therefore, there was little reason for Shoemaker to be on high alert for future mental health needs without some indication from plaintiff that issues had resurfaced. The record does not reveal that he provided any such indication until January 11, 2010, when he submitted a form to Shoemaker asking for medications (and there is no dispute that Shoemaker responded to this request the very next day). In short, there is no genuine issue of material fact regarding whether Shoemaker possessed actual knowledge of plaintiff's mental health issues while he was housed in the drunk tank in December 2009.

### IV.	CONCLUSION

Because plaintiff is unable to establish an issue of fact regarding Shoemaker's "deliberate indifference" to his mental health needs, his claim against her fails. Accordingly, Shoemaker's motion for summary judgment (DE # 96) is **GRANTED.** There being no claims remaining against any defendant, the Clerk is hereby directed to **ENTER FINAL JUDGMENT** in this case stating:

> Judgment is entered in favor of defendants Oscar Cowen, Jr., Ed Trudy, Ed Deirssen, Skylar Ellinger, Bob Simms, and Dawn Shoemaker; and against plaintiff David L. Campbell, who shall take nothing by way of his complaint.

**SO ORDERED.**

Date: May 17, 2013

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT